United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 21, 2004**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 03-51243
Summary Calendar

_____

JOSE AGUINAGA; LUCILA JAIME; BERTHA URGARTE,

Plaintiffs-Appellants,

VERSUS

TEXAS ALCOHOL AND BEVERAGE COMMISSION;
DOYNE BAILEY,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
BUCK FULLER,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
JEANNENE FOX,
INDIVIDUALLY AND IN HER OFFICIAL CAPACITY;
HERB MURILLO,
IN HIS INDIVIDUAL CAPACITY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas
m EP-02-CV-167-PRM

_____

Before SMITH, DEMOSS, and STEWART,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Plaintiffs Jose Aguinaga, Lucila Jaime, and Berta Ugarte appeal a summary judgment. Finding no error, we affirm.

I.

Plaintiffs were employees of the Ports of Entry Section ("POE") of the Licencing and Compliance Division of the Texas Alcoholic Beverage Commission.[1] They were known as Taxpayer Compliance Officers ("TCO's") and were responsible for collecting taxes owed as alcohol is imported into Texas. Herb Murillo was their supervisor.

Murillo received complaints from two TCO employees under his supervision that some evening shift TCO's were leaving their workplace early without permission. Murillo reported the information to Santos Saldana, the Program Administrator for the POE, who relayed the same to Buck Fuller, TABC's Director of Compliance. With the approval of Jeannene Fox, the Director of TABC's Regulatory Division, Fuller and Saldana instituted an investigation pursuant to which Murillo began covertly monitoring when TCO's left their posts.

Near the beginning of the two-month in-quiry, Murillo circulated a memo to TCO's to remind them to stay on post for the whole of their work hours, absent permission otherwise. Nonetheless, Murillo discovered that five of the TCO's, including plaintiffs, persisted in leaving early and without permission, claiming on their time sheets to have worked full days. Murillo also found that two of the employees, Jaime and Ugarte, had falsified Tax Stamp Sales records that misrepresented the time spent at their posts.

Fuller brought the five before him to hear their explanations. They claimed that they had left early based on a purported misunderstanding of a "clean-up day" policy that allowed for early departure with the express permission of Murillo, if an employee had previously devoted time to the upkeep of his duty station. Fuller was unsympathetic to the excuses and, after advice from Fox, terminated the five with approval from TABC Administrator Doyne Bailey.

II.

Plaintiffs sued, alleging unlawful discriminatory firing and First Amendment retaliation, among other theories, seeking monetary damages, injunctive relief, attorney's fees, and reinstatement with back pay. For purposes of the Eleventh Amendment, they sought injunctive relief against defendants in their personal capacities and damages in their official capacities. The district court granted defendants' motion for summary judgment, concluding, especially, that the title VII claim was without merit and that the First Amendment retaliation claim against defendants in their individual capacities was blocked by qualified immunity.

We review a summary judgment *de novo*, applying the standard required by Federal Rule of Civil Procedure 56(c). *Norman v. Apache*

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Plaintiffs sued the Texas Alcoholic Beverage Commission ("TABC") under the inaccurate name "Texas Alcohol and Beverage Commission."

2

*Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). We view evidence in the light most favorable to plaintiffs, the non-moving parties, and draw all reasonable inferences in their favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 134 (2000). Summary judgment is proper if there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law.

### III.

Plaintiffs argue that defendants violated their First Amendment rights by terminating them on account of protected speech. A public employee may not be discharged for exercising his right to free speech. *Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir. 1990). The district court concluded that defendants are protected by qualified immunity under the Eleventh Amendment.

The Eleventh Amendment prohibits federal courts from exercising jurisdiction over suits against non-consenting states. *Seminole Tribe v. Florida*, 517 U.S. 44, 72-73 (1996). For Eleventh Amendment purposes, a suit against a state agency such as the TABC is a suit against the state. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 98, 100 (1984). Nonetheless, a plaintiff may sue individual state officials *via* 42 U.S.C. § 1983. *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994).

Section 1983 actions against state officials in their individual capacities are limited by the doctrine of qualified immunity, *id.*, which allows government officials to exercise their official duties with independence and without fear of liability, so long as they do not act with plain incompetence or disregard of the law. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). To defeat qualified immunity, a plaintiff must show a violation of a clearly established constitutional right: (1) that plaintiff suffered an adverse employment decision; (2) that his speech involved a matter of public concern; (3) that his commenting on such matters outweighed the employer's interest in promoting efficiency; and (4) that the exercise of free speech motivated the adverse employment action. *Lukan v. N. Forest Indep. Sch. Dist.*, 183 F.3d 342, 346 (5th Cir. 1999). If plaintiff makes a showing of a plain violation of a constitution right, he further must prove that the violation was objectively unreasonable.

Plaintiffs say that they were fired not for failing to stay on post for their whole work period, but because of various complaints they had voiced concerning their treatment and the quality of their work conditions. Though they show that they suffered an adverse employment action by virtue of their termination, they fail to satisfy other elements of a showing of the violation of a clearly established constitutional right.

Plaintiffs repeat now that the matters they complained of largely concerned such things as the delapidated conditions of their work areas, lack of computer training, and unfavorable work schedules. They also made clear at numerous times their distaste for the allegedly drunken and surly Murillo. These, however, are not complaints made by plaintiffs in their capacity as citizens, but are merely complaints in their capacity as employees. *See Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

Public employees may not rely on the Constitution to redress personal grievances; successful First Amendment retaliation claims must be based on repression of speech made by employees speaking as in their role as a citizen, rather than only as an employee. *Id.*

3

Matters of public concern include misuse of public money or other corruption but generally do not encompass complaints about churlish or incompetent management. *See Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1988).

As the district court observed, Jaime's complaints concerning improper tax stamp procedures might be deemed to be relating to public concerns of administrative efficiency and propriety, but Fox, who fired Jaime, was unaware of those complaints, which thus cannot be said to have motivated the termination. Likewise, Ugarte's complaints to the Health Department, inasmuch as they involved issues relating to public matters of concern, were equally unknown to Fox or anyone else involved in his termination.

## IV.

Plaintiffs contend they were fired because of their Mexican-American origins, in violation of title VII. Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), we employ a three-part test to gauge whether a plaintiff has successfully shown intentional discrimination. First, he must establish a *prima facie* case of discrimination. Second, the employer may defeat a presumption of discriminatory conduct by articulating a legitimate and nondiscriminatory reason for its action. Third, if the employer has articulated a nondiscriminatory reason, the plaintiff may show, by a preponderance of evidence, that the suggested reason was a mere pretext for discrimination.

As the district court noted, plaintiffs' *prima facie* case fails because that they show no similarly situated employees of other national origin who received better treatment than did they. Nonetheless, they allege that caucasian members of other divisions of the TABC received better treatment. The treatment of those employees, however, is not under "nearly identical" circumstances, given their different job descriptions, disciplinary rules, and individual supervisors. *See Okoye v. Univ. of Tex. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). And, as the district court observed, even had the plaintiffs shown a *prima facie* case, they failed to provide evidence, in the form of affidavits, statistical data, or otherwise, that the reason defendants offered for their termination was pretextual. Employees' subjective feelings and conclusional allegations of bias cannot alone suffice to prove discriminatory intent.

AFFIRMED.