Gary VALLEZA, Plaintiff,

v.

CITY OF LAREDO, TEXAS, Rodolfo Gonzalez, Individually, and Victor Oliveros, Individually Defendants.

No. CIV.A.L–03–54.

United States District Court,
S.D. Texas,
Laredo Division.

July 19, 2004.

Murray Edward Malakoff, Laredo, TX, for Plaintiff.

William Michael McKamie, Fletcher and Springer LLP, San Antonio, TX, for Defendants.

### MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is Defendants' Motion for Summary Judgment filed February 20, 2004. (Docket No. 15) Plaintiff filed a response on April 13, 2004. (Docket No. 20)

This case arises out of Plaintiff's termination as an animal control officer with the City of Laredo Health Department. Plaintiff began working for the Health Department in January 2000 and was terminated in September 2001. He alleges that his termination was in retaliation for complaints that he made to his supervisor, Defendant Rodolfo Gonzalez, about safety concerns which affected both him and other animal control employees. He argues that these statements were protected speech related to matters of public concern and, therefore, that his termination violated the First Amendment of the U.S. Constitution. Plaintiff also claims that Defendants subjected him to adverse personnel action for his efforts to discuss these complaints with other employees, thereby violating his associational freedoms under §§ 101.001 and 101.301 of the Texas Labor Code.

To prevail on a motion for summary judgment under Fed. R. Civ. Pro. 56(c), a Defendant must show that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In order for Plaintiff to recover on a claim for retaliation in violation of the

First Amendment, he must demonstrate four elements: "(1) an adverse employment action; (2) speech involving a matter of public concern; (3) the employee's interest in speaking outweighs the employer's interest in efficiency; and (4) the speech must have precipitated the adverse employment action." *Kennedy v. Tangipahoa Parish Library Board of Control,* 224 F.3d 359, 366 (5th Cir.2000).[1]

■ Plaintiff has satisfied the first element, as he was terminated from his employment in September 2001. Whether Plaintiff's speech involved a matter of public concern is a question of law to be resolved by the court. *Markos v. City of Atlanta, Texas,* 364 F.3d 567, 570 (5th Cir.2004).

■ Plaintiff argues that a number of his statements relating both to his own safety and that of his coworkers resulted in his termination. Because these statements related both to Plaintiff's personal interest as an employee and to the safety of other employees, they represent "mixed speech" subject to the "content, context, form" analysis under *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). *Kennedy,* 224 F.3d at 366. The Fifth Circuit has established three broad principles which inform this analysis:

> "First, the content of the speech may relate to the public concern if it does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the government.... If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the

content of the speech may be public in nature... Second, speech need not be made to the public... but it may relate to the public concern if it is made against the backdrop of public debate.... And third, the speech cannot be made in furtherance of a personal employer-employee dispute if it is to relate to the public concern." *Id.* at 372 (citations omitted).

The Fifth Circuit has further stated, "[b]ecause almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in his role as employee." *Terrell v. University of Texas System Police,* 792 F.2d 1360, 1362. (5th Cir.1986) These considerations lead the Court to conclude that, on the occasions in question, Plaintiff was not speaking as a citizen, but rather as an employee dissatisfied with working conditions.

■ In assessing Plaintiff's speech, the Court looks not to the allegations raised in the pleadings, but rather to the evidence presented as to the contents and context of the speech. See *Wallace v. Texas Tech University,* 80 F.3d 1042, 1047 (5th Cir. 1996).

■ To the extent that there are any "controverted" issues of fact in this case, the contradictions lie between testimony given by Plaintiff in his deposition and statements subsequently made by him in an affidavit attached to his response. In this situation, it is the deposition testimo-

---

1. The bulk of Defendants' evidence is directed towards rebutting the fourth prong, by demonstrating that Plaintiff was terminated because of repeated incidents of substandard job performance, and not because of any speech. However, because the Court concludes that no constitutionally protected speech was involved here, it does not reach this issue.

ny, and not the affidavit, which is given credence. *S.W.S Erectors v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir.1996) ("[T]his court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.")

■ Plaintiff's allegations that he repeatedly complained to Defendant Gonzalez about his personal lack of safety equipment, such as snares and safety glasses, are rebutted by his deposition testimony. During his deposition, he conceded that he received a replacement trap the week following his complaint. Deposition of Gary Valleza ("Deposition") at 50, September 10, 2003, attached as Exhibit A to Defendant's Motion. Despite his allegations that he was denied safety glasses at some point during 2001, he was unable to recall with any specificity when he had lost them and conceded that he received a replacement pair subsequent to his complaint. He was unable to specify the precise delay. Deposition at 52.

Plaintiff further states in his affidavit that he protested to Gonzalez that three of his co-workers were not issued safety belts which protect the workers "from job hazards such as becoming trapped with loose animals in enclosed spaces." In his deposition he acknowledges that he was also complaining on his own behalf. Deposition at 53. He states that he, personally, may have gone "like a month, two or three" without a safety belt. *Id.* at 54. He clarified that one of the three co-workers, did have a safety belt, albeit a torn one. *Id.* at 53–54. When shown documents indicating that another co-worker, Anna Munoz, had been issued a safety belt during the year 2001, he replied, "[W]hen I was working with her, she never had a safety belt." *Id.* at 56. He echoed this response when shown a similar document for the third employee. *Id.* at 57.

While these grievances may have been legitimate, the best one can conclude from Plaintiff's testimony is that any lapses were episodic and not part of a persistent policy of unsafe conditions. More importantly, as Plaintiff himself states in his affidavit, the function of these belts was to protect the employees from job hazards. This is clearly a situation of employee grievance, with no evidence that it concerned public safety.

His next complaint related to the alleged placement of two untrained and unvaccinated employees in a high-risk quarantine area in February of 2001. Although his precise grievance with this situation is unclear, it appears that he believed this incident posed a health threat to the new employees. At his deposition, Plaintiff acknowledged that, as part of their training, new hires were often sent into the field to observe proper animal control techniques and to distribute fliers, but were not permitted to handle the animals until fourteen days after their vaccinations. Deposition at 57–58. Plaintiff does not state that this policy was violated in this incident. Instead, he apparently maintains that these two employees were on one occasion dispatched to an area that he described as "a high risk quarantine area."

Plaintiff also alleged that he admonished supervisors of the "imperative nature" of forwarding a specimen from a potentially rabid dog to a State laboratory. However, at his deposition Plaintiff acknowledged Department policies mandating that animals could not be destroyed until the end of a ten-day period during which pet owners could claim their pets. Deposition at 60. Although aware of this policy, in this particular case Plaintiff claimed to have independently determined that the owner would not retrieve the animal, and that the animal's head should have been severed and forwarded to the laboratory immedi-

ately. Deposition at 60. Plaintiff does not dispute that the specimen was eventually sent to the State lab, nor does he suggest that it was sent outside the mandatory waiting period. Deposition at 63.

Plaintiff further complains that once he had permission to ship this dog's head to the state laboratory, Defendant Gonzalez told him to package it in the employee lounge. Deposition at 63. Plaintiff complained that following this instruction was unsanitary and that normally these packages were prepared in the "office." *Id.* at 64[2]. Be that as it may, this one isolated instance of a possibly unsanitary practice does not support Plaintiff's sweeping allegations of an animal control office that consistently put its employees and the public at risk. Indeed, as Plaintiff notes, it appears that packaging animal tissues in the lounge was not the usual practice, and that this one incident was unique.

In summary, and viewing the evidence in the light most favorable to the Plaintiff, the speech at issue related to intermittent, apparently brief, periods during which employees were improperly equipped, to a single training policy which Plaintiff subjectively felt put employees' health at risk, and to one incident of Plaintiff's being asked to perform a certain task in an unsanitary environment. While Plaintiff's inclusion of his fellow employees' working conditions in some of his complaints was admirable, the evidence overwhelmingly suggests that this was part of his own ongoing disagreement with his supervisor over working conditions. In considering "which hat was worn" by Plaintiff in making these complaints, the Court concludes that these exchanges involved an internal employment dispute, motivated by Plaintiff's "private concerns." *Teague v. City of*

*Flower Mound, Texas,* 179 F.3d 377, 383–84 (5th Cir.1999); *Gillum v. City of Kerrville,* 3 F.3d 117 (5th Cir.1993).

Other considerations further support this conclusion. The record is devoid of any evidence that Plaintiff's speech related to such "hot-button issues" as public safety, racial discrimination or sexual harassment. See *Aguinaga v. Texas Alcohol and Beverage Commission,* 98 Fed.Appx. 328, 331 (5th Cir., May 21, 2004) ("Matters of public concern... do not encompass complaints about churlish or incompetent management."); cf. *Wilson v. UT Health Ctr.,* 973 F.2d 1263 (5th Cir.1992) (speech protected where employee reported instances of sexual harassment against both herself and others); *Thompson v. City of Starkville, Mississippi,* 901 F.2d 456 (5th Cir.1990) (speech protected where police officer complained of unethical conduct by police officers who received promotion).

Significantly, this speech was not made in the public domain, and there is no indication that Plaintiff was considering "going public" with this information, nor that safety concerns of animal control officers ever was a source of significant public debate. Cf. *Markos v. City of Atlanta,* 364 F.3d 567 (5th Cir.2004) (statements to newspaper reporter regarding police cover-up were matter of public concern); *Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216 (5th Cir.1999) (speech of plaintiff-teachers elected to represent concerns of others at internal district-level meeting regarding quality of school was protected where quality of school had been widely discussed in community). Because the Court concludes that Plaintiff has failed to establish that his speech related to matters

---

**2.** Although unclear from the evidence, it appears that the employee lounge is a common area for all Health Department employees, and that the "Office" is a different part of the same building. Regardless, Plaintiff apparently was concerned that they package was prepared in an area where people often ate.

of public concern, his First Amendment claim fails.

■ Plaintiff also claims that Defendants violated his right to associational freedom under the Texas Labor Code. Specifically, he states that Defendants Oliveros and Gonzalez observed Plaintiff's "informal meetings" with co-workers Cecilia Rodriguez and Francisco Camacho in the Health Department parking lot during which they discussed many of Valleza's concerns. During his deposition, however, Valleza conceded that he had no factual basis for concluding that the two Defendants had observed or overheard these conversations. Deposition of Gary Valleza at 67–68.

In any event, even assuming that the supervisors had overheard these conversations, these facts would not sustain a claim under the Texas Labor Code. Section 101.001 reads, "All persons engaged in any kind of labor may associate and form trade unions and other organizations to protect themselves in their personal labor in their respective employment." Conversely, § 101.003 guarantees a laborer's right to bargain freely and without compulsion to bargain collectively. These statutes are designed to protect employees who wish to join labor unions and to protect those who do not.

Plaintiff includes the affidavit of a former coworker, Cecilia Rodriguez, who states that, subsequent to Valleza's termination, she overheard an employee, Julio Gonzalez, telling two others that Defendants Oliveros and Gonzalez were questioning the employees as to whether they or Valleza had joined a union. Rodriguez's statement as to what Gonzalez said that the Defendants had said is hearsay, and not competent evidence. In any event, Plaintiff does not suggest that he and his coworkers were actually contemplating or discussing joining a union. Essentially, Plaintiff is attempting to characterize a parking lot conversation among three employees as protected labor organizing activity. This argument is without merit.

Defendants' motion for summary judgment is GRANTED.