Darlene CHIASSON

v.

CITY OF THIBODAUX, Deborah Daigle, and Clare Benoit

No. Civ.A.02–3162.

United States District Court, E.D. Louisiana.

Nov. 1, 2004.

Richard Paul Bullock, Gregory S. Johnson, Bullock & Johnson, Beryl Denise Torrence, Underwood Law Firm LLC, Baton Rouge, LA, for Plaintiff.

Stephen J. Roppolo, Scott David Schneider, Fisher & Phillips, LLP, New Orleans, LA, for Defendants.

*ORDER AND REASONS*

VANCE, District Judge.

Defendants City of Thibodaux, Deborah Daigle and Clare Benoit move for summary judgment under Federal Rule of Civil Procedure 56 on plaintiff Darlene Chiasson's claims that they retaliated against her for engaging in activity protected by Louisiana Revised Statute Section 23:967 and the First Amendment of the United States Constitution. Plaintiff Darlene Chiasson opposes the motion. For the following reasons, the Court GRANTS defendants' motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Darlene Chiasson was hired by the City of Thibodaux in July of 1998 as a billing and collections clerk in the City's finance department. In early 2000, Chiasson's supervisor, Clare Benoit, was promoted to department supervisor, and Chiasson replaced Benoit as collections supervisor. Rachel Mack was hired to replace Chiasson as the billing and collections clerk. Benoit's supervisor was Deborah Daigle, the finance director for the City of Thibodaux.

Chiasson, Mack, and Benoit were responsible for collecting daily deposits from customers for utility bills, combining and consolidating daily deposits received by the department, and assisting with collections, telephone filings, customer service and general office duties. At the end of the day, each person was to generate a daily cash report of her cash drawer to ensure that the amount of cash in the drawer matched the stubs indicating the payments she received that day.

On November 20, 2000, Mack sent a memorandum to Benoit and Chiasson, complaining that Benoit neglected her duties and failed to perform her share of the work. (Def.'s Mot. Summ. J. Ex. 2). Specifically, Mack complained that she and Chiasson handled 99 percent of collections, and she accused Benoit of taking breaks, going on personal visits, and using her computer for personal purposes such as sending e-mail and downloading music files. Mack asked for a meeting of the three of them to discuss her complaints. (Def.'s Mot. Summ. J. Ex. 3).

When the three met, Benoit informed the others that her duties had changed now that she was a supervisor, and that she was actually working on the computer. The issues remained unresolved, and Benoit suggested that the parties meet with Daigle.

On November 27, 2000, Chiasson and Benoit met with Daigle. After a discussion of the problems that Mack and Chiasson had with Benoit's performance, Daigle asked Chiasson to put the problems in writing. On November 28, 2000, Chiasson gave Daigle a nine-page, handwritten

memorandum recording her and Mack's complaints that Benoit took breaks, failed to do her work, sent personal e-mails from her computer, downloaded music, made unrealistic work demands on them, and failed to properly serve customers. (Def.'s Mot. Summ. J. Ex. 5).

As a result, Daigle had Napster removed from Benoit's computer. Chiasson testified that Benoit's performance improved "somewhat." On December 7, 2000, however, Daigle held another meeting with the three employees at which Mack's and Chiasson's complaints were revisited. At one point, Chiasson said that it seemed the problem could not be resolved and that it would be in her best interest to resign. Daigle insisted that it was not necessary for anyone to resign and that they could hold weekly meetings until the issues were resolved. Chiasson agreed not to resign.

Several months later, at the beginning of March 2001, Mack and Chiasson spoke to the head accountant about their concerns that Benoit had not properly posted payments and stubs on March 7 and 8. (Chiasson Dep. at 155:16–156:17). The accountant informed Daigle, who asked each employee for her account of what happened. (Chiasson Dep. at 157:4–14). On March 12, 2001, Chiasson wrote a memorandum from which it is difficult to determine exactly what she was complaining about. (Def.'s Mot. Summ. J. Ex. 6). The thrust of the complaint appeared to be that Benoit did not record a $129 pay stub on the day it came in. Chiasson did not accuse Benoit of taking the money. Apparently, the stub was posted the next day. Chiasson also reported that an $80 payment had been received on March 7, but the stub for the payment was not in the report for March 7. Chiasson's memo makes no clear accusation against Benoit in connection with this transaction.

Daigle investigated the incident and determined that Benoit included the $129 stub in the report once Mack reminded her that Mack had given her the payment and that Benoit included the $80 payment on the March 8 report because the payment was received after business hours on March 7. (Daigle Decl. at ¶ 7). After the incident, employees could no longer cash personal checks from the City's cash drawer. (Chiasson Dep. at 158:9–12).

At her deposition, Chiasson testified that the March 12, 2001 memorandum was the only time she complained about the way Benoit handled cash transactions. (Chiasson Dep. at 164:9–25). She also acknowledged that her memorandum did not accuse Benoit of stealing (Chiasson Dep. at 160:20–161:7), and that if there had been a shortage, there are other explanations besides misconduct on the part of an employee. (Chiasson Dep. at 62:4–63:20). The evidence shows that the City tolerates a certain amount of discrepancies to allow for human error, and there is no allegation that this incident exceeded that amount. (Chiasson Dep. at 59:8–12). After her deposition, Chiasson submitted an opposition to defendants' motion for summary judgment in which she said that she "continued to object to Benoit's violations of the law in the handling of money." (Pl.'s Mem. in Opp. to Mot. Summ. J. at 10). She does not specify when she complained, to whom she complained, or the circumstances that gave rise to the newly mentioned complaints.

Chiasson alleges that Benoit began to retaliate against her in November 2000, after she and Mack complained about Benoit's work performance and personal computer use. She contends that the retaliation escalated after March of 2001, when Chiasson reported the irregularities in Benoit's cash reporting. Chiasson alleges that Benoit retaliated by increasing her

scrutiny of Chiasson's work performance, by excluding her socially at the office, and by failing to assist her with customers at the drive-through payment window. Chiasson also alleges that Benoit retaliated by giving her lower scores on her annual performance evaluations in 2001 and 2002 and by writing a memorandum documenting occasions on which Chiasson cashed personal checks in her drawer and failed to follow department procedures for approving subordinates' leave. Chiasson alleges that, because of Benoit's evaluations, Chiasson received a four percent pay increase in 2001 and a three percent pay increase in 2002, when in years past she had received five percent increases.

On July 26, 2001, Chiasson filed a grievance in which she complained about the low scores that she received on her 2001 evaluation. (Pl.'s Mem. in Opp. Mot. Summ. J. Ex. F). The Civil Service Commission considered and dismissed the grievance on August 28, 2001, because the grievance addressed problems with the department's administration that the Civil Service has no authority over, and because the Commission found no reason to believe that granting a four percent pay increase rather than a five percent increase amounted to retaliation. (Pl.'s Opp. to Def.'s Mot. Summ. J., Ex. O at 4). The Commission also found that Chiasson had not requested that the Civil Service Commission take any action, so there was no relief to grant. *Id.*

On May 29, 2002, Chiasson, Mack, Daigle and Benoit met again, this time with the City's Human Resources Director. Apparently, bad blood had developed between Chiasson and Mack because the meeting was prompted by a complaint from Mack that Chiasson pushed her in the back with her elbow, called her a "back-stabber" and a "bitch" who displayed a bad attitude and workplace de-meanor. (Def.'s Mot. Summ. J. Ex. 9). Chiasson was not disciplined, but, as a result of the meeting, Daigle issued a memorandum stating her expectations for employee behavior, such as teamwork, respect, and working out interoffice problems with each other. (*Id.*).

A few months later, Chiasson wrote Mack a letter complaining that Mack was not treating her with respect. She had Benoit review the letter and then gave it to Mack without first approaching her personally. (Def.'s Mot. Summ. J. Ex. 10). The next day, Benoit gave Chiasson a "written warning" for not working as a team player, not following directives from supervisors and arbitrators, not being respectful to co-workers, not keeping problems in the office, and not working out problems with co-workers. (Pl.'s Opp. to Def.'s Mot. Summ. J., Ex. Q).

When Chiasson received the warning on July 18, 2002, she gave her keys to Jessica Hebert, the head accountant, told her to give them to Daigle, and left the office. Chiasson phoned the Civil Service director and told her that she was quitting her job. The director told Chiasson to submit a letter of resignation. On July 22, 2002, Chiasson resigned.

Chiasson sued defendants on October 18, 2002, alleging that she was constructively discharged by defendants, who retaliated against her in violation of her right to free speech under the First Amendment and in violation of the Louisiana Whistleblower statute, LA.REV.STAT. ANN. § 23:967. Defendants now move for summary judgment on both claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *see also Lavespere,* 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325, 106 S.Ct. 2548; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

## III. DISCUSSION

Defendants move for summary judgment on both Chiasson's federal and state law claims. Defendants argue that Chiasson's First Amendment claim must fail as a matter of law because Chiasson's speech did not involve a matter of public concern, and because Chiasson has failed to provide evidence sufficient to raise a genuine issue as to whether she suffered an adverse employment action. As to Chiasson's state law claim, defendants argue that Chiasson has not produced evidence sufficient to show that she engaged in activity protected by LA.REV.STAT. ANN. § 23:967.

### A. First Amendment Claim

■ To establish a First Amendment retaliatory discharge claim, Chiasson must prove that (1) she suffered an adverse employment action, (2) her speech involved a matter of public concern, (3) her interest in commenting on the matter of public concern outweighed defendants' interest in promoting efficiency, and (4) her speech was a substantial or motivating actor behind defendants' actions. *Markos v. City of Atlanta, Texas,* 364 F.3d 567, 570 (5th Cir.2004). Here, Chiasson has failed to satisfy the first two elements, so the Court need not consider the remaining elements.

### 1. Adverse Employment Action

■ Chiasson has failed to provide evidence sufficient to raise a genuine issue as to whether she suffered an adverse employment action. "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Breaux v. City of Garland,* 205 F.3d 150, 157 (5th Cir.2000). The Fifth Circuit has "declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling free speech." *Id.* (citations omitted). This limiting of the list of adverse employment actions ensures that federal courts do not become entangled in relatively trivial matters. *Id.* (citations omitted). Decisions concerning work assignments, pay increases, administrative matters, and departmental procedures, while important to the employee, do not rise to the level of constitutional deprivation. *See Breaux,* 205 F.3d at 157 (citations omitted).

■ Here, the Court finds that Chiasson has not suffered an adverse employment action. She has not shown that she was discharged or threatened with discharge, that she was demoted or was denied a promotion, that she suffered a reduction in pay, or that she was formally reprimanded with adverse consequences. The incidents Chiasson complains about do not, therefore, rise to the level of a constitutional deprivation. Chiasson's receipt of lower evaluation scores, along with any other warnings and criticism she received from Benoit, are administrative or departmental matters, not adverse employment actions. *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir.1997) (holding that an employer's criticism of an employee does not constitute an adverse employment action). Chiasson complains about the amount of her yearly pay increases, but nothing in the record shows that she was entitled to receive a particular pay increase each year. Her complaint thus amounts to a mere dispute over the amount of the pay increase, which is not an actionable adverse employment action. *Id.* Finally, her complaint that she had to work the drive-through window without assistance concerns a work assignment, which is specifically excluded from the list of actionable adverse employment actions. *Breaux*, 205 F.3d at 157. Chiasson has thus failed to produce any evidence that would raise a genuine issue as to whether any of the things she complains about were adverse employment actions.

■ Chiasson also alleges that all of the incidents together amounted to a campaign of hostile retaliation that resulted in her constructive discharge, which is an adverse employment action. To establish that she was constructively discharged, a plaintiff must prove that her working conditions were so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign. *Robertson v. LSU Med. Ctr.*, 54 Fed.Appx. 591, 2002 WL 31730246, at *1 (5th Cir.2002) (citation omitted). A claim of constructive discharge requires the plaintiff to show "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." *Id.* (citation omitted). A plaintiff's resignation rises to the level of actionable constructive discharge only if an employer "deliberately makes an employee's working conditions so intolerable that the employee is forced into involuntary resignation." *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 242–43 (5th Cir.1993).

■ The Court does not find evidence to suggest that Chiasson was so severely harassed that a reasonable person in her position would have felt compelled to resign. Chiasson testified that she suffered harassment in the form of lower evaluation scores, increased written and verbal criticism, social exclusion, and decreased assistance from her co-workers. In *Robertson*, an employee complained that incidents of mistreatment by his employer caused him to resign. 54 Fed.Appx. 591, 2002 WL 31730246, at *1. The Fifth Circuit held that because the employee had not produced any evidence to suggest that the incidents resulted in an official disciplinary action against him, a reduction in job responsibilities, or a reassignment to menial work, he could not show that a reasonable person in his situation would have felt compelled to resign. *Id.* And, in *Harris v. City of Carrollton*, No. Civ.A. 301CV1249M, 2002 WL 31697726, at * 4–5 (N.D.Tex. Nov. 27, 2002), the court held that a plaintiff who complained that defendants would not assist her with tasks and excluded her socially and from meetings had not suffered harassment intolerable enough to raise a genuine issue as to whether she was constructively discharged.

Similarly, here, Chiasson's evidence that she received lower evaluation scores, was excessively scrutinized, excluded socially, and assigned to tasks without help from her co-workers does not amount to severe and intolerable harassment that would compel a reasonable person to resign. Chiasson has not produced evidence to show that the incidents she complains of resulted in any official disciplinary action, reduction in job responsibilities, or reassignment to menial work that might reasonably compel a person in her situation to resign. The incidents of social mistreatment Chiasson complains about are not so severe and intolerable that a reasonable person experiencing them would have been forced to resign. The evidence shows that Chiasson continued to receive pay increases and was specifically urged not to resign when she threatened to do so. Thus, Chiasson has not produced evidence sufficient to raise a genuine issue as to whether she was constructively discharged.

### 2. Speech Involving a Matter of Public Concern

■ Chiasson also fails to withstand summary judgment on the second element required to establish a First Amendment retaliatory discharge claim, whether her speech involved a matter of public concern. This element is a question of law for the Court to resolve. *Markos,* 364 F.3d at 570. The employee bears the burden of establishing that she spoke on a matter of public concern. *Aucoin v. Haney,* 306 F.3d 268, 274 (5th Cir.2002). To sustain her burden, Chiasson must show that she spoke primarily in her role as a citizen on a matter of public concern, rather than as an employee addressing matters of only personal interest. *Fiesel v. Cherry,* 294 F.3d 664, 668 (5th Cir.2002). "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the

community.'" *Branton v. City of Dallas,* 272 F.3d 730, 739 (5th Cir.2001) (quoting *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). The Fifth Circuit has recognized that, "[b]e-cause almost anything that occurs within a public agency *could* be of concern to the public," it is not of great significance that an employee's speech is simply on a topic in which the public might or would have a great interest. *Terrell v. Univ. of Texas Sys. Police,* 792 F.2d 1360 (5th Cir.1986). Thus, to determine whether an employee's speech addresses a matter of public concern, the Court must examine the content, form, and context of the statements, as revealed by the whole record. *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684.

Chiasson alleges that defendants violated her First Amendment free speech rights when they retaliated against her for speaking out on a matter of public concern. Two incidents of speech are at issue in this case: (1) the complaints Chiasson made about Benoit's work performance in late 2000, and (2) the memorandum Chiasson wrote to Daigle on March 12, 2001 about Benoit's mishandling of funds. Defendants argue that neither incident involves a matter of public concern because the speech is private in content, form and context.

### a. Complaints Made in Late 2000

■ In late 2000, Chiasson complained that Benoit took breaks, went on personal visits, and used her computer for personal purposes such as sending e-mail and downloading music. The Court finds that Chiasson's complaints that Benoit used her computer for personal purposes and did not do her fair share of the work are personal grievances that relate to the conditions of Chiasson's employment and the quality of her work environment. When the content of speech "deals with individu-

al personnel disputes and grievances," the speech does not involve a matter of public concern. *Davis v. West Cmty. Hosp.*, 755 F.2d 455, 461 (5th Cir.1985). Here, Chiasson complained about Benoit's conduct primarily because it affected Chiasson personally, by increasing the amount of work she had to do. (Chiasson Dep. at 92:4–15, 99:10–15). Chiasson's workload is not a matter of public concern. *See Knowlton v. Greenwood Indep. School Dist.*, 957 F.2d 1172, 1178 (5th Cir.1992) (holding that although workers objected to being required to work without pay in violation of statute, their concern was the effect of the work on their employment and personal lives, so their speech involved private, not public, concerns); *Dorsett v. Bd. of Trustees for State Colleges & Universities*, 940 F.2d 121, 125 (5th Cir.1991) (teacher's complaints about assignment of additional work to himself and to his friends in the department were motivated by personal concern about work environment). Thus, the content of Chiasson's complaints about Benoit's work performance indicates that she spoke in her role as an employee on a matter of purely private concern.

Furthermore, the context and form of Chiasson's complaints indicate that they do not involve matters of public concern. Chiasson's complaints were made in the context of an internal employment dispute, and they were dealt with through internal administrative procedures. *See Bradshaw*

*v. Pittsburg Indep. School Dist.*, 207 F.3d 814, 817 (5th Cir.2000) (employee's choice to file internal grievances rather than publicize her complaints weighs in favor of finding her speech private, rather than public). Moreover, Chiasson made no attempt to make her complaints public. Although this factor is not determinative, it does comprise "part of the context of the communication to be considered in determining whether the speech addressed a matter of public concern." *Davis*, 755 F.2d at 461. Thus, the context and form of Chiasson's complaints indicates that they do not involve matters of public concern.

After examining the content, form, and context of Chiasson's complaints about Benoit's work performance, the Court finds that, as a matter of law, Chiasson's complaints in late 2000 did not involve a matter of public concern. Thus, Chiasson cannot sustain a claim that any retaliatory action motivated by these complaints violates the First Amendment.

**b. The March 12, 2001 Memorandum**

▬ Chiasson also argues that she spoke out on "illegal activities" in her department. Specifically, she contends that she complained in the March 12, 2001 memorandum[1] that Benoit was "floating" city money for her own personal use and that this complaint of wrongdoing involves a matter of public concern.

---

1. Although Chiasson appears to contend in her opposition that she spoke out about Benoit's improper handling of money on other occasions (Pl.'s Mem. in Opp. to Mot. Summ. J. at 10), she provides no specifics about when and to whom these other complaints were made, or the specific content of the complaints. This assertion also contradicts Chiasson's deposition testimony that she did not make any complaints about the way Benoit handled her transactions other than the March 12, 2001 memorandum. (Chiasson Dep. at 164:9–25). Conflicts between deposi-

tion testimony and subsequent affidavits are resolved in favor of the deposition testimony. *Valleza v. City of Laredo, Texas*, 331 F.Supp.2d 579, 582–83 (S.D.Tex.2004) (quoting *S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir.1996) ("[T]his court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.")). The Court therefore disregards plaintiff's vague and unsupported attempt to impeach her own testimony.

The Court finds that, considering all the circumstances, Chiasson's memorandum documenting what she had heard about Benoit's late posting of payments does not involve a matter of public concern. First, as to content, Chiasson's speech does not allege the kind of serious wrongdoing on the part of public officials that courts have found to be matters of public concern. Although the Fifth Circuit has found that an allegation of serious misconduct by a public official is a matter of public concern, *see e.g., Branton,* 272 F.3d at 739, Chiasson testified that she was not accusing Benoit of stealing.[2] The gravamen of the wrongdoing that Chiasson documented in her memorandum is an allegation that two transactions involving a total of $209 were posted a day late. That allegation does not approach the level of malfeasance that was exposed by employees in cases in which the Fifth Circuit found that the speech involved a matter of public concern. *See Markos,* 364 F.3d at 571 (holding that speech that alleged a police cover up of an officer's use of excessive force involved a matter of public concern); *Branton,* 272 F.3d at 740 (holding that employee's speech reporting another police officer's dishonest testimony at a disciplinary hearing was a matter of public concern); *Davis v. Ector County,* 40 F.3d 777, 782 (5th Cir.1994) (holding that speech alleging that public officials sexually harassed an employee involved a matter of public concern).

Rather, Chiasson's memorandum is similar to the internal grievance filed by a police officer in *Thompson v. City of Starkville, Mississippi,* 901 F.2d 456 (5th Cir.1990), which the Fifth Circuit found did not, by itself, involve a matter of public concern. In *Thompson,* the officer filed a grievance alleging that the police department awarded promotions that violated department policy. *Id.* at 457. The court suggested that this grievance alone, based as it was on a violation of department policy, was not speech that involved a matter of public concern. *Id.* at 462. The court alternately found that the officer's speech involved a matter of public concern only because he had made additional complaints that pertained "to charges of egregious misconduct on the part of the police." *Id.* Here, Chiasson's memorandum cannot be read to allege anything more than a violation of department policy that transactions be posted on the day they are received, a matter that cannot fairly be considered of public concern. *See Branton,* 272 F.3d at 739. Thus, the content of Chiasson's memorandum does not address a matter of public concern.

The context of Chiasson's memorandum also indicates that it does not involve a matter of public concern. The evidence demonstrates that the relationship between Chiasson and Benoit was fractious. Chiasson's criticism of two isolated acts by a fellow employee with whom she was having an ongoing personal conflict indicates that the memorandum was of a personal nature. For example, in *Mahaffey v. Winston County Sheriff's Dep't,* 96 Fed. Appx. 191, 193 (5th Cir.2004), the Fifth Circuit held that, although a conversation in which an employee alleged official wrongdoing by her supervisor may have involved a public matter, the contentious relationship between the two "is more indicative of an employee embroiled in an ongoing employment dispute rather than of a private citizen intent on rooting out police corruption or of a concerned citizen voter." *See also Davis,* 755 F.2d at 461–62 (holding that a doctor's complaints about

---

**2.** After her deposition, Chiasson submitted an affidavit in which she disingenuously tries to recharacterize her testimony. To the extent that Chiasson's affidavit conflicts with her deposition testimony, the Court gives credence to the latter. *Valleza,* at 582–83.

isolated acts of poor patient care on the part of another doctor with whom he was having a personal conflict were not matters of public concern). Chiasson's complaints also did not "arise against a background of ongoing public debate" about any department policy, which might indicate that a matter of public concern was involved. *See Dorsett,* 940 F.2d at 125; *Dodds v. Childers,* 933 F.2d 271, 274 (5th Cir.1991). Thus, the context of Chiasson's memorandum supports a finding that she did not speak on a matter of public concern.

Finally, the form of Chiasson's memorandum also indicates that Chiasson spoke primarily in her role as an employee on a matter of private concern, rather than as a citizen on a matter of public concern. Chiasson did not make her complaint public, choosing instead to proceed entirely within the department by filing internal complaints and grievances. Although that fact is not dispositive, it does weigh in favor of a finding that Chiasson's speech was private rather than public in nature. *See id; Davis,* 755 F.2d at 461. Thus, the form of Chiasson's memorandum indicates that she was speaking as an employee, and not as a citizen on a matter of public concern.

Considering the content, form and context of Chiasson's memorandum, the Court finds that Chiasson's speech about two isolated instances of alleged violations of department policy does not address a matter of public concern. Because the Court concludes as a matter of law that Chiasson has failed to establish that her speech involved a matter of public concern, it need not consider whether Chiasson established the remaining essential elements of her claim.

### B. Louisiana Whistleblower Statute Claim

█ Now that the Court has dismissed the claim over which it has original juris-

diction, it must decide whether to exercise supplemental jurisdiction over Chiasson's state law claim under the Louisiana Whistleblower statute, LA.REV.STAT. ANN. § 23:967. 28 U.S.C. § 1367(c). The general rule is that district courts should decline jurisdiction over state law claims when all federal claims are dismissed, but "this rule is neither mandatory nor absolute." *Smith v. Amedisys Inc.,* 298 F.3d 434, 447 (5th Cir.2002). In *Amedisys,* the Fifth Circuit held that the district court did not abuse its discretion when it decided to retain jurisdiction over the plaintiff's discrimination claims under Louisiana law after the plaintiff's federal claims were dismissed. The Fifth Circuit reached its conclusion because the lawsuit was in the advanced stages of litigation and the trial court "had substantial familiarity with the merits of the case." *Id.* (citations omitted). Here, the lawsuit before the Court is also in an advanced stage. Discovery is complete, and the parties are on the eve of trial. The Court concludes, as did the district court in *Amedisys,* that the factors of judicial economy, convenience, fairness and comity weigh in favor of retaining jurisdiction over plaintiff's state law claim. Thus, the Court will exercise supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(c).

█ Chiasson asserts that she was constructively discharged in violation of Louisiana's Whistleblower statute. Under that statute, "an employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law ... [d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law." LA.REV.STAT. ANN. § 23:967. Chiasson has failed to produce evidence sufficient to raise a genuine issue as to whether she

disclosed a violation of state law, which she must do to maintain a claim under LA.REV. STAT. ANN. § 23:967.

The only violation of state law that Chiasson alleges that she disclosed is a violation of the Louisiana statute proscribing "unauthorized use of a movable." LA.REV. STAT. ANN. § 14:68. That statute proscribes the "intentional taking or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently." *Id.* The Louisiana Supreme Court construes the statute following the principle of lenity, to "give to defendant the benefit of any legitimate doubts regarding the scope of the statute's proscriptions." *State v. Bias*, 400 So.2d 650, 652 (La.1981). The statute also requires a showing of criminal intent, *id.*, and was "intended to cover mainly the unauthorized use of automobiles." *State v. Gisclair*, 382 So.2d 914, 916 (La.1980).

Chiasson argues that when she complained that Benoit was using her computer for personal use, Chiasson disclosed actions that constituted "unauthorized use of a movable" under LA.REV.STAT. ANN. § 14:68. Chiasson also argues that when she wrote her March 12, 2001 memorandum, she disclosed the "unauthorized use of a movable" under LA.REV.STAT. ANN. § 14:68.

### 1. Complaints Made in Late 2000

The Court finds that Chiasson's complaints in late 2000 did not disclose the crime of unauthorized use of a movable under LA.REV.STAT. ANN. § 14:68. Benoit's use of her computer for personal reasons was not an "intentional taking or use of a movable which belongs to another." *Id.* Had Benoit removed the computer from the office, thereby depriving the rightful owner of property, the result may have been different. But Benoit's use of the computer for personal reasons simply does not involve the kind of deprivation of property, such as taking another's car for a joyride, that the statute prohibits. In addition, Chiasson has not produced any evidence to show that Benoit acted with the kind of criminal intent required to show a violation of the statute. *See Bias*, 400 So.2d at 652. At most, Benoit may have violated a department policy that prohibited the use of office equipment for personal reasons. That violation does not constitute unauthorized use of a movable under LA.REV.STAT. ANN. § 14:68, and does not rise to the level of "serious employer misconduct" required to trigger the Louisiana Whistleblower statute. *See Fondren v. Greater New Orleans Expressway Comm'n*, 871 So.2d 688, 691 (2004).

### 2. The March 12, 2001 Memorandum

The Court also finds that Chiasson's March 12, 2001 memorandum did not disclose the crime of unauthorized use of a movable under LA.REV.STAT. ANN. § 14:68. Chiasson discusses two incidents in the memorandum, but she appears to mention Benoit's name only in connection with the first, which involved the late posting of a $129 transaction. The conduct Chiasson complained about consisted of, at most, posting transactions a day late. Despite Chiasson's subsequent attempts to suggest that her memorandum disclosed a violation of state law, the Court must consider the actual content of the memorandum and discern what it could have been fairly interpreted to disclose at the time she wrote it. Chiasson's present attempt to characterize the memorandum as an accusation that Benoit created a "float" of the City's money for her personal use is irrelevant. Chiasson did not complain in her memorandum, or at any other time during the

course of her employment, that Benoit was intentionally taking or using the City's money. Her memorandum did not use the word "float." Rather, her written complaint is a garbled account of an incident that does not accuse Benoit of intentionally engaging in conduct that would violate state law. Her complaint does not involve the kind of "serious employer misconduct" at which the Louisiana Whistleblower statute is aimed. *See Fondren,* 871 So.2d at 691. Thus, Chiasson has failed to produce evidence sufficient to raise a genuine issue as to whether she disclosed a violation of state law that would fall under the protection of LA.REV.STAT. ANN. § 23:967, and defendants are entitled to summary judgment on her state law claim as well.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the defendants' motion for summary judgment.